Plaintiff brings this appeal of an intermediate decision of the Department of Social Services (hereinafter "DSS"), and the defendant DSS moves to dismiss on the ground that the plaintiff has not exhausted its administrative remedies.
In its complaint, plaintiff claims that postponement of the appeal of the intermediate decision of the DSS, will result in an inadequate remedy if it has to await a determination of the underlying appeal. In its motion to dismiss, DSS attached an affidavit verifying to the record in this proceeding in which this court discerned that an issue of fact existed as to the plaintiffs claim of inadequate remedy. Consequently the court ordered an evidentiary hearing on that issue.
The pertinent section of the Uniform Administrative Procedure Act here involved is § 4-183(b) which reads as follows:
 (b) A person may appeal a preliminary, procedural or intermediate agency action or ruling to the Superior Court if (1) it appears likely that the person would otherwise qualify under this chapter to appeal from a final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy.
The facts are as follows: The Plaintiff, Yorkshire Manor, Inc. is a 23-bed residential care facility in East Haven, Connecticut, licensed by the Connecticut Department of Public Health. Yorkshire Manor is a participant in the state's supplement to the federal Social Security income program administered by the DSS. The rates for participants in the state supplement program are established annually for each facility by DSS based on each facility's costs as reported in an annual cost report for the CT Page 4556 cost year ending each September 30. Payment rates are based on the annual cost reports and are set to be effective July 1 of the following year.
In the latter part of 1998. DSS audited Yorkshire Manor's cost reports for the cost years ending September 30, 1995, 1996, and 1997. As a result of the audit and by letter dated May 13, 1999, DSS revised Yorkshire Manor's rates downward for those rate years to $38.59 per diem for 1997, $36.68 per diem for 1998 and $37.21 per diem for 1999. Pursuant to Connecticut General Statutes §17b-238(b), Yorkshire Manor exercised its right to request a rehearing of that rate decision. It further requested that DSS delay any recoupment of funds pending resolution of the appeal. Despite Yorkshire Manor's request and the filing of the appeal, DSS implemented the reduction of Yorkshire Manor's daily rates from $56.77 to $37.21, with the payment for June 1999 services. On June 18, 1999, Yorkshire Manor filed with the DSS a letter seeking a reversal of the rate reduction and, as required by § 17b-238(b), a detailed, written description of each of its items of aggrievement to be presented in the appeal. On June 29, 1999, the DSS, responding to Yorkshire Manor's contest of the rate reduction, set a temporary rate of $50 per diem pending a hearing on the § 17b-238(b) appeal of audited adjustments.
On November 3, 1999, DSS filed upon Yorkshire Manor and the other defendants herein a notice of regulatory violations and proposed sanctions for violating laws governing reimbursement for cost of goods and services furnished by Yorkshire Manor to beneficiaries of the state supplement to the federal supplemental program. On December 7, 1999. DSS notified Yorkshire Manor that because of the violations identified in the November 3, 1999 notice, it would no longer delay implementation of the 1996 audit findings as applied to the current year, and, as a consequence, set the per diem rate of Yorkshire Manor at $38.19. On December 9, 1999, plaintiff moved the DSS to maintain the previously established temporary $50 rate pending hearing on the appeal of the audited adjustments. On December 17, 1999, DSS denied plaintiffs motion and applied the rate of $38.19.
The plaintiff, in this action, appeals the DSS decision of December 7, 1999, setting the per diem rate of $38.19 and the DSS decision of December 17, 1999 denying Yorkshire Manor's motion to maintain the rate of $50.00 per day pending the decision on Yorkshire Manor's § 17b-238(b) rehearing rate adjustment. CT Page 4557
The rehearing before DSS is presently underway. Several sessions have been held and the parties represented to this court that the rehearing would not be concluded for six months.
At issue is whether or not the postponement of plaintiffs intermediate appeal will result in an inadequate remedy to Yorkshire Manor. In Office of Consumer Counsel v. Department ofPublic Utility Control, CV 93527909, Superior Court, Judicial District of Hartford/New Britain at Hartford, December 20, 1993. (Maloney. J.), 10 CONN. L. RPTR. 16, 509 (February 7, 1994), Judge Maloney dealt with this issue. He stated that the plaintiff must demonstrate that it will be harmed by the postponement of the disputed preliminary ruling even if plaintiff were ultimately to prevail on the appeal of the agency's final decision. In that case the Connecticut Natural Gas Company ("CNG") filed with the Department of Public Utility Control, a notice of its intent to apply for a rate increase. CNG further requested that it be permitted to use as its "test year" the twelve months period ending September 30, 1992, rather than a later test period the DPUC rules would ordinarily require. The Office of Consumer Counsel opposed the request and a hearing was held on that discreet subject. The DPUC issued a ruling permitting CNG to use the requested test period and OCC filed an interim appeal. Judge Maloney found that the normal remedy of the appeal of the DPUC's decision on the rate increase application would redress any alleged errors committed by the DPUC in processing the application, including the use of an unauthorized test year. Consequently, Judge Maloney held that postponement of his consideration of the issues raised in the intermediate appeal would not result in an inadequate remedy and dismissed that appeal.
In Reardon v. Department of Public Health and AddictionServices, CV 94 0705232, Superior Court, Judicial District of Hartford/New Britain at Hartford, 12 CONN. L. RPTR. 477 (September 22, 1994) (Maloney, J.), while an appeal was pending before a medical examining board on whether or not to revoke plaintiff doctor's medical license, plaintiff decided not to renew his license and then filled a motion with the board to dismiss the charges on the basis that they had become moot. The board denied the motion and plaintiff appealed that denial to the Superior Court. Connecticut General Statutes § 19a-14a
preserves the license of a physician against lapse while the licensee is the subject of a disciplinary action. Judge Maloney dismissed the § 4-183(b) appeal on the grounds that plaintiff CT Page 4558 has not shown that postponement of that appeal until the medical examining board rendered its final decision on his case would result in an inadequate remedy.
Those cases, however, are distinguishable from the instant case. In each of the cases cited above, the plaintiff filing the intermediate appeal failed to show that he would be harmed pending the outcome of the appeal, on the merits, of the administrative agency's decision. Here, Yorkshire Manor claims that unless it gets relief from the intermediate decision of DSS reducing its per diem rate to $38.19 until a final determination of the rehearing on the DSS rate adjustment for Yorkshire Manor, it will suffer irreparable harm by not being able to meet its expenses and thus will have to go out of business.
This court must evaluate the evidence adduced at the hearing before it on that issue. The evidence was that the per diem rate of $38.19 would result in a monthly income to Yorkshire Manor of approximately $25.200. Camille Frosolone, owner of Yorkshire Manor, submitted Exhibit A, prepared by its accountant, to the effect that the expenses of the Manor for the months of September, October and November 1999 were respectively $31,608.47, $30,168.47 and $31,502.38. She then submitted Exhibit B indicating her estimated expenses for the months of January, February and March 2000 to be $38,561.02. She gave no adequate explanation for that substantial rise in monthly expenses. Her testimony was replete with inconsistencies. At one point she testified that the monthly salary of $14,494.30 on Exhibit B did not include her salary or that of her primary assistant Dawn M. Pascale. Then she said it did, then she said she was not sure. Moreover some of the monthly expenses on Exhibit B were clearly not allowable under DSS regulations, such as $600 for loan payments to Mrs. Frosolone, $900 for interest payments to Mrs. Frosolone, and $3,500 for legal fees. She admitted she could not be absolutely sure of her estimates, or that they were absolutely accurate. Furthermore, Mrs. Frosolone took the Fifth Amendment and refused to testify as to kick backs against wages for overnight employees and as to whether or not wages were paid to an employee Ann Lombarlo.
David Gendreau, supervisor of the audit department for long-term nursing facilities for DSS testified that on Yorkshire Manor's projected expenses (Exhibit B), the following would be disallowed: Loan payment to Mrs. Frosolone ($600), interest payments to Frosolone ($900), and legal fees ($3,500). CT Page 4559 Accountant's fee of $800 would be limited to $500, and property tax of $300 would not be allowed for past due taxes. He testified that additional information would be needed with respect to monthly expenses of car insurance ($230.95) and car payment ($399.74) to be sure that the vehicle was owned by Yorkshire Manor, health insurance of $1,354 to be sure it was offered to all employees (if not, it would be disallowed), and miscellaneous charges of $700 because this may duplicate maintenance expenses. Also salaries would be carefully scrutinized to be certain there were time cards to justify them, and salaries to related parties, such as Dawn M. Pascale who lived with Mrs. Frosolone, may not be allowed. Finally, he stated that based on the audit made by the department, the per diem rate of $38.19 should reimburse Yorkshire Manor for all allowable expenses and the Manor should be able to operate at that rate.
The court gives no credence to plaintiffs Exhibit B projecting Yorkshire Manor's expenses at $38,561.02 a month and no credence to the testimony of Camille Frosolone attempting to justify those monthly expenses. However, plaintiffs Exhibit A, indicating monthly expenses of approximately $31,000, does have a ring of authenticity. Although the auditor for DSS questioned some of the items in that schedule and indicated a need for additional information before approving of other items, even in making allowance for those matters, the expenses of Yorkshire Manor appear to this court to be likely to exceed the income that would be realized from a per diem rate of $38.19.
As consequence, the court concludes that postponement of the instant intermediate appeal until determination of the §17b-238(b) rehearing on rate adjustment would result in an inadequate remedy to Yorkshire Manor. Thus, Yorkshire Manor does comply with § 4-183(b) and may bring this intermediate appeal. The motion to dismiss is denied. CT Page 4560